**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| **VICTOR VEGA-ENCARNACION, Individually on his own behalf and others similarly situated,** | CIVIL NO. |
| v. | **[CLASS ACTION FAIRNESS ACT]** |
| **GHIRARDELLI CHOCOLATE COMPANY**; | **JURY TRIAL DEMANDED** |
| Defendants. | |

# CLASS ACTION COMPLAINT

Plaintiff Victor Vega-Encarnacion, (hereinafter, "Plaintiff"), a Puerto Rico resident, pursuant to Rule 23 of the Federal Rules of Civil Procedure, brings this class action, on behalf of himself and of all other similarly situated persons, against Defendant Ghirardelli Chocolate Company, on behalf of himself and those similarly situated, for violations of the Consumer Legal Remedies Act, false advertising, violation of the Unfair Competition Law, and fraud, deceit and/or misrepresentation. The following allegations are based upon information and belief, including the investigation of Plaintiff's counsel, and the facts that are a matter of public record, as follows:

**NATURE OF THE ACTION**

1. Plaintiff brings this action individually and on behalf of a proposed class ("Class"), as more fully defined below, of similarly situated consumers, in Puerto Rico, and all U.S. Territories, seeking to redress the pervasive pattern of fraudulent, deceptive, false and otherwise improper advertising, sales and marketing practices Defendant deceptively informed and led its customers to believe that they were purchasing, for a premium price,

products containing chocolate, while failing to adequately disclose that such products contain no chocolate, white chocolate, or cocoa derivatives of any kind and that they were "artificial" or "imitation." Defendant obtained substantial profits from these unlawful and deceptive sales.

## JURISDICTION, PARTIES AND VENUE

2.     Original jurisdiction of this Court exists by virtue of 28 U.S.C. § 1332(d)(2) and the Class Action Fairness Act ("CAFA"). See 28 U.S.C. § 1711, et. seq. The Plaintiff and certain of the Defendants in this action are citizens of different U.S. jurisdictions and territories and the amount in controversy in this action exceeds five million dollars ($5,000,000.00), exclusive of interest and costs. Jurisdiction is also appropriate as Defendant Ghirardelli Chocolate Co. otherwise intentionally avails itself of the Commonwealth of Puerto Rico market through its marketing and sales of the products in the Commonwealth of Puerto Rico and/or by having such other contacts with Puerto Rico so as to render the exercise of jurisdiction over it by the District of Puerto Rico court consistent with traditional notions of fair play and substantial justice.

3.     Venue is proper in this District under 28 U.S.C. § 1391(a), (b), and (c) because a substantial part of the events giving rise to these claims occurred in the District of Puerto Rico; Defendants and/or their agents were doing business in Puerto Rico; and/or Defendants are otherwise subject to personal jurisdiction in this judicial district.

## PLAINTIFFS

4.     For purposes of clarity, the Plaintiff is asserting claims on behalf of all consumers of Ghirardelii Chocolate in the Commonwealth of Puerto Rico and all other U.S. territories, who do not appear herein as named Plaintiffs.

5.     Plaintiff Victor Vega-Encarnacion is a resident of the Commonwealth of Puerto Rico, who

has been purchasing Ghirardelli branded chocolates since approximately 2014.

**DEFENDANTS**

6.     Defendant Ghirardelli Chocolate Company ("Ghirardelli") is a corporation incorporated

under the laws of the State of California, having its principal place of business in San

Leandro, California.  Ghirardelli is a wholly owned subsidiary of Lindt & Sprüngli AG.

**GENERAL ALLEGATIONS**

7.     Ghirardelli is a manufacturer and marketer of premium chocolate products.

8.     Claiming to be America's longest continuously operating chocolate manufacturer,

9.     Ghirardelli markets itself as having established its position as America's premium

chocolate company for more than 150 years.  Defendant further contends on its website at

www.ghirardelli.com (the "Website") (last visited May 2015) that it is "one of very few

American manufacturers that make chocolate starting from the cocoa bean through to

finished products. Throughout the process, [Ghirardelli claims to take] special steps to

ensure that [its] premium chocolate delivers [its] signature intense, smooth-melting

chocolate taste."

10.    Ghirardelli also claims on its Website that its customers can taste the "Ghirardelli

difference" due to the following:

   a.   "Intensive quality assurance in the selection of cocoa beans means that Ghirardelli
        accepts only the highest-quality beans. We reject as many as 30% of the beans that
        are offered to us. Beans that are not selected are sold to other manufacturers."

   b.   "In all of its chocolate products, Ghirardelli uses a proprietary blend of cocoa beans
        that has been refined over the company's 160-year history to provide the company's
        distinct and intense chocolate taste."

   c.   "Ghirardelli roasts the cocoa beans in-house to ensure the company's signature flavor
        profile is consistently maintained in all chocolate products. We also use a different

roasting process whereby they remove the shell first and then roast the small nibs inside. Because the nibs are fairly uniform in size, we have more control over the temperature and time, so it can get a more specific flavor. Other companies roast their beans before removing the shell, which requires over-roasting the outside portion of the bean in order to roast the inside. This could impart a burned flavor to their chocolate."

    d.  "Finally, Ghirardelli uses an intensive refining process to ensure that its chocolate truly melts in your mouth! Ghirardelli has no grainy feel because we refine most of our chocolate flakes until they are 18 microns (human hair is 100 microns in diameter). Other mass market chocolates are refined to only 50 microns."

11.    Ghirardelli states that its product line includes its signature SQUARES™ chocolate, chocolate bars, other chocolate confections, chocolate chip cookies, "baking chocolate," and chocolate beverages.

12.    This case focuses on three Ghirardelli products that are sold and marketed as white chocolate products even though they contain no chocolate, white chocolate or cocoa butter. These are:

    a.  Ghirardelli® Chocolate Premium Baking Chips – Classic White ("Fake White Chocolate Chips");

    b.  Ghirardelli® Chocolate White Chocolate Flavored Confectionary Coating Wafers ("Fake White Chocolate Wafers");

    c.  Ghirardelli® Chocolate Sweet Ground White Chocolate Flavor ("Fake Ground White Chocolate");

    d.  Ghirardelli® Intense Dark Hazelnut Heaven Chocolate Sweet Ground White Chocolate Flavor ("Fake Dark Chocolate ")

13.    The United States Food and Drug Administration ("FDA") has issued regulations requiring that a food label "accurately identify or describe, in as simple and direct terms as possible, the basic nature of the food or its characterizing properties or ingredients," that it "not be confusingly similar to the name of any other food that is not reasonably encompassed within the same name." 21 C.F.R. § 102.5(a). The label also must "include

a statement of the presence or absence of any characterizing ingredient(s) or component(s) and/or the need for the user to add any characterizing ingredient(s) or component(s) when the presence or absence of such ingredient(s) or component(s) in the food has a material bearing on price or consumer acceptance or when the labeling or the appearance of the food may otherwise create an erroneous impression that such ingredient(s) or component(s) is present when it is not, and consumers may otherwise be misled about the presence or absence of the ingredient(s) or component(s) in the food." *Id.* §102.5(c). Such statement must be in boldface print of sufficient size on the front display panel. (Id).

14. The FDA regulations further provide that "If the label, labeling, or advertising of a food makes any direct or indirect representations with respect to the primary recognizable flavor(s), by word, vignette, e.g., depiction of a fruit, or other means" then "such flavor shall be considered the characterizing flavor" and one of the following tests must be met: (1) the food must contain the "characterizing food ingredient, e.g., strawberries in 'strawberry shortcake'" in an amount sufficient to "independently characterize the food," (2) if the ingredient is present but insufficient to independentley characterize the food," the word "natural flavor" must be present, (3) if the flavor is simulated by being derived from another product, then the product must be labelled "either with the flavor of the product from which the flavor is actually] derived or as 'artificially flavored,'" and (4) if any artificial flavor is present "which simulates, resembles or reinforces the characterizing flavor," the food must be labelled "artificially flavored."

15. FDA regulations also require that "a food shall be deemed to be misbranded if it is an imitation of another food unless its label bears, in type of uniform size and prominence,

the word 'imitation' and, immediately thereafter, the name of the food imitated." 21 C.F.R.§ 101.3(e). There is an exception to this rule if the substituting food that resembles another food (i) "is not nutritionally inferior to the food for which it substitutes and which it resembles," (ii) complies with the provisions of [21 C.F.R.] § 102.5 of this chapter" [see above] and "is not false or misleading." *Id.* § 101.3(e)(2).

16. The FDA has also adopted standards of identify for "chocolate" and "white chocolate." The regulations provide that "Chocolate" must contain "chocolate liquor" made by "finely grinding cacao nibs" such that the chocolate liquor is "not less than 50 percent nor more than 60 percent by weight of cacao fat." 21 C.F.R. § 163.111 *et seq*. The regulations further provide that "White chocolate is the solid or semiplastic food prepared by mixing and grinding cocoa butter with one or more of the optional dairy ingredients listed in [21 C.F.R. § 163.124(b)(2)] and one or more optional nutritive carbohydrate sweeteners. **It contains a minimum of 20 percent cocoa butter**, a minimum of 14 percent of total milk solids, a minimum of 3.5 percent milkfat, and a maximum of 55 percent nutritive carbohydrate sweeteners." Id. §163.124 (emphasis added); 67 Fed. Reg. 62171, 62173 (Oct. 4, 2002) (establishing standard of identity for white chocolate; explaining that "Because products bearing the name "chocolate" would be expected to contain some cacao-derived ingredients, we believe that it is necessary to ensure that 'white chocolate' contains cacao-derived ingredients.")

17. Interpreting the above regulations at the time it issued the white chocolate standard of identity, the FDA considered the argument that "chocolate-type products made with ingredients not derived from cacao could be identified as 'chocolate-flavored' or 'artificially flavored' to sufficiently distinguish them from white chocolate products

derived from cacao. The comment further stated that consumers could look at the ingredient list to discover the substitution of less expensive ingredients not derived from cacao; thus, current regulations are sufficient to prevent economic deception." It ruled as follows:

FDA does not agree that identifying chocolate products made from cheaper non-cacao ingredients as "artificially flavored" or "white chocolate-flavored" would be sufficiently descriptive with regard to the composition of white chocolate. These terms refer to the characterizing flavor of a food, not its composition. The terms suggest products that are flavored to taste like white chocolate, but they do not provide guidance as to white chocolate's composition. Thus, use of such terms does not negate the need for a standard of identity, but rather further supports its need because, without a definition and standard for "white chocolate," there is no way to define "white chocolate-flavored." Moreover, FDA regulations governing use of the term "flavored" Sec. 101.22(i)(1)(i) (21 CFR 101.22(i)(1)(i)) provide that a product that is expected to contain an ingredient, e.g., "white chocolate," must bear the term "flavored" in the name of the food if the food contains natural flavor derived from that ingredient and either an amount of the ingredient insufficient to independently characterize the food or none of the ingredient. Therefore, unless a food contains the flavoring constituents derived from white chocolate, it cannot be named "white chocolate-flavored."

18. Once a standard for white chocolate has been established "white chocolate-flavored" could be used to describe a food that is commonly expected to contain the characterizing food ingredient, white chocolate, and which contains natural flavor derived from such an

ingredient (i.e., cocoa butter or cacao fat) (Sec. 101.22(i)(1)(i)). The term "artificially-flavored white chocolate" or "artificially-flavored dark chocolate" could be used in cases where the food contains an artificial flavor that simulates, resembles, or reinforces the characterizing flavor (Sec. 101.22(i)(2)). The only constituent in white chocolate that is derived from the cacao bean is cacao fat (i.e., cocoa butter); therefore, the agency assumes that if a cheaper ingredient that was not derived from cacao were used to replace the cacao-derived ingredient, the substitute ingredient would be some type of fat or oil used to replace the cacao fat. In this case, the agency would treat such products as substitute or imitation white chocolate products (21 CFR 101.3(e)) and would not regulate them by requiring that they be labeled "white chocolate-flavored." See. Fed. Reg. 62171, 62172 *(citing* 21 C.F.R. § 101.22(i)(1)(i)).

19.   Each of the regulations discussed above apply to or have been independently adopted as part of the Food, Drug and Cosmetic Laws, and Health and Safety Codes of Puerto Rico and the Virgin Islands.

20.   The packaging for all the Fake White and Dark Chocolate Products is inconsistent with the FDA regulations, and those embodied in the state law for a uniform reason: All the packaging prominently uses the term "chocolate" on the primary label panel when the products, in fact, contain no dark chocolate or white chocolate, cocoa butter, cacao fat, or any cacao derivatives.

21.   The word "Chocolate" is used on the front panel immediately following the brand name "Ghirardelli®" in a manner that suggests that it is the "characterizing flavor," 21 C.F.R.

§ 101.22(i), of the product. The label shows "Ghirardelli®" is the brand name (as it is followed by the registered trademark symbol) and "Chocolate" as the flavor (as it is in a smaller font and not followed by any trademark symbol. The label does not state the brand name as "Ghirardelli Chocolate Company." Moreover, even if it had done so, or even if "Ghirardelli® Chocolate" were deemed to be a "trademark or brand," the regulations would require the statements about "artificial" or "imitation" immediately following that trademark or brand. *Id.* §§ 101.22(i)(3).

22.   Defendant intentionally price its fake white and dark chocolate products as the dame price as its similar real (dark or milk) chocolate products. For example, it sells its Fake White Chocolate Chips at the same price as its real chocolate chips (*i.e.,* their milk chocolate, semi-sweet chocolate, and bittersweet chocolate chips), its Fake Ground White Chocolate at the same price as its ground chocolate (*i.e.,* ground cocoa), its Fake White Mocha at the same price as its real "Ghirardelli® Chocolate Premium Hot Cocoa – *Chocolate Mocha*," (*i.e.,* coffee-flavored cocoa), and its Fake Intense Dark Hazelnut Heaven Bar at the same prices as its real chocolate products. These actions further deceive customers into believing that all the Fake White and Dark Chocolate Products contain chocolate. As a result, customers pay a premium for the Fake Chocolate Products that cost Defendant far less to manufacture than real chocolate products.

23.   Defendant did not disclose that the Fake Chocolate Products were not dark chocolate, white chocolate, nor were they flavored with chocolate or white chocolate. To do so, they would at a minimum have been required to state in the appropriate font size and type, on the front or  primary label panel, "Imitation" (or, if one of the other ingredients was designed to simulate the chocolate flavor, to state that ingredient as the flavor or to

state "artificial" or "artificially flavored.")  Accordingly, all the packaging violated the state and federal regulations set forth above.

24.  The packaging of the Fake Chocolate Products is deceptive for additional reasons.  It refers to the product as "Classic Chocolate" to deceptively mislead consumers into believing that it is classic white or dark chocolate.  It states that the product is "Premium" leading consumers to incorrectly believe that, unlike its competitors, the product is a premium chocolate product.  It then goes on to deceptively state: "The luxuriously deep flavor and smooth texture of Ghirardelli Premium Baking Chocolate delivers the ultimate chocolate indulgence."  But because there is no chocolate or white chocolate in Defendant's products, the product cannot deliver a "deep chocolate flavor or texture" or the "moments of ultimate pleasure."  The label further says that the product contains the "Finest grind for smoothest texture and easiest melting" but in fact, unlike real chocolate, the product is not "ground" from cocoa beans.

25.  The use of the language about "luxuriously deep and velvety dark chocolate" is particularly misleading because the *identical* language appears on the packaging of another product made by Defendant: the Ghirardelli® Chocolate White Chocolate Premium Baking Bar.  But the latter product *does* in fact contain white chocolate (a.k.a. at least 20% cocoa butter.)  Indeed, the first listed ingredient is "White chocolate."  Thus, consumers who see both products (which are likely to appear near each other on the retail shelves or Defendant's Website, and which are sold at the same price) will assume that both contain the same ingredients except that one is a bar one and other is the chips, but the products are otherwise the same.

26.  The use of the term "Intense Dark" in the Fake Intense Dark Hazelnut Heaven Bar

increases the deception because it suggests that the product is unchanged from the original. As defined by Webster's Dictionary, "chocolate" is "a food prepared from ground roasted cacao beans" and "white chocolate" is "a confection of cocoa butter, sugar, milk solids, lecithin, and flavorings."

27.     Beyond Defendant's affirmative misrepresentations, it also fails to adequately disclose that its Fake White Chocolate Chips and Intense Dark Chocolate Hazelnut Bar are not chocolate and/or that they do not contain any chocolate or cocoa butter.

28.     Beyond Defendant's false and deceptive packaging, it falsely and deceptively markets and advertises the Fake Chocolate Products on its Website, and in other widely available advertising and marketing materials.

29.     As explained above, Defendant's Website touts the history and preeminence of Ghirardelli Chocolate products with no indication that any of them are not in fact chocolate.

30.     Defendant sells a cookbook with recipes for its products, including the Fake White Chocolate Chips, which further shows that even its own agents and employees have been deceived into believing that the Fake White Chips are real white chocolate.  For example, the cookbook contains a recipe for "Tiramisu-Me" in which the ingredient list includes a "White Chocolate Mixture" containing mascarpone cheese and "1/4 cup Ghirardelli Classic White Chocolate Chips."  The recipe then goes on to instruct the reader to "mix the mascarpone cheese and white chocolate chips."  The Ghirardelli Chocolate Company, The Ghirardelli Chocolate Cookbook: Recipes and History from America's Premier Chocolate Maker (Ten Speed Press: 2007).

31.     Defendant also trains its store personnel at its branded retail locations (including the

flagship store at Ghirardelli Square and the store at Union Square, both in San Francisco), to inform customers that *all* the Ghirardelli products are real chocolate products. Customers who ask, for example, for "white chocolate chips" are directed to the Fake White Chocolate Chips without being told that the product contains no chocolate. In one instance, an investigator asked a Ghirardelli store retail employee if there were any non-chocolate Ghirardelli products that he could purchase for a friend with a chocolate allergy; the employee stated (as trained to do), that there were none.

32. Defendant further permits customers to search its website by choosing to "Shop By Product," and then to choose the "White Chocolate" category. This process causes the Website to present the Fake White Chocolate Chips, the Fake Ground White Chocolate, and the Fake White Chocolate Wafers. These products appear alongside the real White Chocolate Baking Bar and the Classic White Chocolate Flavored Sauce, which, as discussed above, do contain white chocolate and/or cocoa butter, which compounds the deception. Defendant also advertises, for example, on the Internet by purchasing key words such as "white chocolate," and asking consumers if they "Want White Chocolate?" If consumers follow the link on Defendant's advertisements, they are taken to Defendant's website and offered the Fake White Chocolate Products.

33. Finally, Defendant permits its marketing partners, including mega-stores, to advertise, market, advertise and sell its Fake White Chocolate Products. Defendant provides its marketing partners information that specifically refers to these Fake Chocolate Products as real chocolate. For example, the marketing material provided by Defendant to retailers for the Fake Chocolate Chips tells retailers that the product name is "Classic White Chocolate Chips." Retailers in turn use this name when displaying the product on

store shelves.

34.    Defendant's competitors more adequately disclose the truth about their products that are imitation or artificially flavored white chocolate. The Hershey Company, for example, sells a competitive product to Defendant's Fake White Chocolate Chips, which it calls "Premier White Chips." But unlike the Defendant's Fake White Chocolate Chips, Hershey specifically states, immediately under the name of the product, "Artificially Flavored Creamy Vanilla." Moreover, nowhere does the Hershey's package state "chocolate." Indeed, the Hershey product offers a recipe for "White Chip Chocolate Cookies" (rather than "White Chocolate Chip Cookies"), which specifically requires that the user add cocoa powder. As a result, the retail price for Hershey's Premier White Chips is less than Defendant's Fake White Chocolate Chips.

35.    Similarly, the Nestle S.A. Company sells, for less money that Defendant's Fake White Chocolate Chips, "Toll House Premier White Morsels." Like Hershey, but unlike Defendant, the Nestle package (1) discloses that its "Premier White Morsels" are "creamy vanilla-flavored baking pieces" and (2) nowhere states that the "Premier White Morsels" are "chocolate" or "white chocolate."

36.    On May 28, 2015, Plaintiff purchased Intense Dark Hazelnut Heaven Bar. Prior to purchasing the Ghirardelli® Chocolate Bar — Intense Dark, Plaintiff reviewed the packaging to satisfy himself that he was purchasing real chocolate. Plaintiff specifically reviewed Defendant's statements on the package that the product is "luxuriously deep and velvety dark chocolate". Plaintiff further relied on Defendant's failure to adequately disclose that the product was artificial or imitation, was not chocolate, and that it contained no cocoa butter. He then purchased Defendant's Ghirardelli® Intense Dark

Hazelnut Heaven Bar from a Walgreens Pharmacy in Humacao, Puerto Rico for $3.29.

37.  Had Defendant not misrepresented (by omission and commission) the true nature of its Fake Chocolate Products, Plaintiff would not have purchased Defendant's product or, at a very minimum, he would have paid much less for the product.

Plaintiff brings this action against Defendant on behalf of himself and all others similarly situated, as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure.

Plaintiff seeks to represent a class defined as follows:

> **All persons who, between August 17, 2008 and the present, purchased, in Puerto Rico, the Virgin Islands, and U.S. Territories, any of the following products that have the word "Chocolate" on the primary display panel: "Ghirardelli® Chocolate Premium Baking Chips– Classic White," "Ghirardelli® Chocolate White Chocolate Flavored Confectionary Coating Wafers," "Ghirardelli® chocolate Sweet Ground White chocolate Flavor, and Intense Dark Hazelnut Heaven Ba**r.

### CLASS ACTION ALLEGATIONS

38.  Plaintiff brings this suit as a class action on behalf of himself and on behalf of other similarly situated persons pursuant to Fed.R.Civ.P.23(a), 23(b)(2), and/or 23(b)(3). Subject to additional information obtained through further investigation and/or discovery, the foregoing definition of the Classes may be expanded or narrowed.  The proposed Classes are defined as follows:

39.  **Class:** All persons who purchased any of Defendants' Chocolate Flavored products in the District of Puerto Rico, and all U.S. territories, within the applicable statutory limitations period, including the period following the filing date of this action.

40.  Excluded from the Classes are: (1) Defendants, Defendants' subsidiaries, affiliates, officers, directors, assigns and successors, and any entity which Defendants have a

controlling interest; (2) the Judge to whom this case is assigned and any member of the judge's immediate family; (3) anyone who purchased the Ghirardelli branded chocolate products for the purpose of resale; and (4) anyone asserting claims for personal injury. Plaintiff reserves the right to modify the Class and Subclass definitions as further investigation and/or discovery so warrant.

41.   This action has been brought and may properly be maintained as a class action pursuant to Fed. R. Civ. P. 23 and case law thereunder.

42.   **Numerosity**:  The members of the Classes are so numerous that joinder of all members is impracticable.  Plaintiff reasonably believes that the Classes are comprised of tens of thousands of consumers throughout Puerto Rico and the United States territories.

43.   **Commonality**: Common questions of law and fact exist as to all members of the Classes. These common questions predominate over any questions affecting only individual Class members. These common legal and factual questions include, but are not limited to, the following:

- whether Defendants'  claims regarding  the  Ghirardelli branded  Chocolate products are deceptive or misleading;

- whether Defendants engaged in false or misleading advertising;

- whether Defendants' conduct as alleged herein violates the Puerto Rico Deceptive Acts and Practices Act and/or other U.S. territories unfair trade practices acts;

- whether Defendants' conduct as alleged herein constitutes a breach of warranty;

- whether Defendants' conduct as alleged herein constitutes unjust enrichment;

- whether Plaintiff and Class members  have sustained monetary  loss and the proper measure of that loss; and

- whether Plaintiff and Class members are entitled to declaratory and injunctive relief.

These and other questions of law or fact which are common to the members of the Classes and predominate over any questions affecting only individual members of the Class.

44.   **Typicality**: Plaintiffs claims are typical of the claims of the members of the Classes, as all Class members are similarly affected by Defendants' wrongful conduct. Plaintiff, like other members of the Classes, purchased Ghirardelli branded Chocolate flavored products after exposure to the same material misrepresentations and/or omissions appearing on the product packaging and on or in Defendants' marketing and advertising, and received a product that was not as represented. Plaintiff is advancing the same claims and legal theories on behalf of himself and all absent members of the Classes.

45.   **Adequacy**: Plaintiff´s claims are made in a representative capacity on behalf of the other members of the Class. Plaintiff has no interests antagonistic to the interests of the other members of the proposed Class and is subject to no unique defenses.

46.   Plaintiff is similarly situated in interest to all members of the proposed Class and is committed to the vigorous prosecution of this action and has retained competent counsel experienced in the prosecution of class actions. Accordingly, Plaintiff is an adequate representative of the proposed Class and will fairly and adequately protect the interests of the Class.

47.   This suit may be maintained as a class action under Fed. R .Civ. P. 23(b) (2) because Defendants have acted, and/or refused to act, on grounds generally applicable to the Classes, thereby making appropriate final injunctive relief. Specifically, injunctive relief is necessary and appropriate to require Defendants to: (i) discontinue advertising,

marketing, packaging and otherwise representing Ghirardelli branded Chocolate flavored products as superior; (ii) undertake an immediate public information campaign to inform members of the proposed Classes as to their prior practices; and (iii) to correct any erroneous impression consumers may have derived concerning the nature, characteristics, or qualities of the Ghirardelli branded Chocolate flavored products including without limitation, the placement of corrective advertising  and  providing written notice to the public.

48.     In addition, this suit may be maintained as a class action under Fed. R. Civ .P. 23 (b)(3) because a class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. The injury suffered by each individual class member is relatively small in comparison to the burden and expense  of  individual  prosecution  of  the  complex  and  extensive litigation  necessitated  by Defendants' conduct. It would be virtually impossible for members of the Classes individually to redress effectively the wrongs done to them. Even if the members of the Classes could afford such litigation, the court system could not. Individualized litigation presents a potential for inconsistent or contradictory judgments. Individualized litigation increases the delay and expense to all parties, and to the court system, presented by the complex legal and factual issues of the case. By contrast, the class action device presents no management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

### COUNT I

**(Breach of Express Warranty)**
**Deceptive and Unfair Marketing**

49.    Plaintiff re-alleges and incorporates by reference the allegations contained in paragraphs 1-48 above as if fully set forth herein.

50.    Plaintiff, and each member of the Class, formed a contract with Defendants at the time they purchased Defendants' Ghirardelli branded Chocolate flavored products. The terms of that contract include the promises and affirmations of fact made by Defendants on the labels of Defendants' Ghirardelli branded Chocolate flavored products and through the advertising and marketing campaign, as alleged above. The Ghirardelli branded Chocolate flavored product's labeling and advertising constitute express warranties, are part of the basis of the bargain, and are part of a standardized contract between Plaintiff and the members of the Classes, on the one hand, and Defendants, on the other.

51.    Alternatively, privity was established between Defendants and Plaintiff and Class Members because Defendants, and/or its agents, were substantially, if not completely responsible for directly promoting and marketing Defendants' Ghirardelli branded Chocolate flavored products to Plaintiff and Class Members and Plaintiff and Class Members were directly promoted to and marketed to by Defendants prior to purchasing Ghirardelli branded White Chocolate flavored products resulting in the purchase of Defendants' product by Plaintiff and Class Members. By virtue of this direct promotion and marketing to Plaintiff and Class Members, Defendants directly made an express warranty of the Ghirardelli branded Chocolate flavored products attributes and benefits to Plaintiff and Class Members.

52.    All conditions precedent to Defendants' liability under the warranty have been performed by Plaintiff and the Classes.

53.    Defendants breached the terms of the express warranty by not providing a product that

provided the benefits promised. The statements made by Defendant that warranted Defendants' claims of the Ghirardelli branded White and Intense Dark Chocolate flavored products having a superior nature, attributes and benefits were not "puffery" or mere opinion - they were statements and affirmations of specific benefits and superior performance over alternative and lower priced sources of white chocolate allegedly based on scientific study, constitute violations of the provisions of Section 5 of the Trade Commission Act and Rules 5 and 7 of the Regulations Against Deceitful and Misleading Advertising of the Puerto Rico Department of Consumer affairs, the Virgin Islands Consumer Fraud and Business Practices Act, 12A V.I.C. § 301 et seq.., and other territorial Consumer Fraud Protection Acts.

54. Plaintiffs and Class Members relied on these representations by Defendants in purchasing Ghirardelli branded White Intense Dark Chocolate flavored products instead of less expensive, but equally or more effective alternative sources for chocolate.

55. As a result of Defendants' breach of warranty, Plaintiff and the Classes have been damaged in the amount of the purchase price of Defendants' Ghirardelli branded White and Intense Dark Chocolate flavored products they purchased, and have suffered other damages to be determined by proof at trial.

## COUNT II

### (Unjust Enrichment)

56. Plaintiff re-alleges and incorporates by reference the allegations contained in paragraphs 1-55 above as if fully set forth herein.

57. Plaintiff and Class members conferred a tangible economic benefit upon Defendants by purchasing the Ghirardelli branded White and Intense Dark Chocolate flavored

products. Plaintiff and Class members would have expected remuneration from Defendants at the time this benefit was conferred had they known that the Ghirardelli branded White and Intense Dark Chocolate flavored products was artificial or imitation, was not chocolate, was not "white chocolate" and that it contained no cocoa butter.

58.   As a direct and proximate result of Defendant's misconduct as set forth above, Defendants have been unjustly enriched at the expense of Plaintiff and Class members.

59.   It would be inequitable for Defendants to retain the profits, benefits and other compensation obtained by its wrongful conduct in marketing and selling of the Ghirardelli branded White and Intense Dark Chocolate flavored products.

60.   Plaintiff, on behalf of himself and Class members, seeks restitution from Defendants, and an order of this Court disgorging all profits, benefits and other compensation obtained by Defendants from their wrongful conduct.

61.   The Defendants' acts and omissions as well as their failure to use reasonable care in this matter as alleged in this complaint, including but not limited to, the knowing misrepresentation or failure to disclose the source, affiliation, origin, characteristics, ingredients, standards and quality of Ghirardelli branded White and Intense Dark Chocolate flavored products constitute violations of the provisions of  Section 5 of the Trade Commission Act and Rules 5 and 7 of the Regulations Against Deceitful and Misleading Advertising of the Puerto Rico Department of Consumer affairs, the Virgin Islands Consumer Fraud  and Business Practices Act, 12A V.I.C. § 301 et seq.., and other territorial Consumer Fraud Protection Acts.

62.   The Defendants' unconscionable, unfair, and deceptive acts and practices set forth in this Complaint are likely and reasonably foreseeable to mislead Plaintiff and members

of the Class acting reasonably in their reliance on defendant's acts and practices, and to their detriment.

63.     The Defendants engaged in the unconscionable, unfair, and deceptive acts or practices set forth in this Complaint in the conduct of trade or commerce, in violation of the provisions of Section 5 of the Trade Commission Act and Rules 5 and 7 of the Regulations against Deceitful and Misleading Advertising of the Puerto Rico Department of Consumer affairs.

64.     The Defendants' misrepresentations or omissions as set forth in this Complaint are material in that they relate to matters which are important to consumers or are likely to affect the purchasing decisions or conduct of consumers, including Plaintiff and Class  Members regarding Defendants' products.

65.     The Defendants' business practice, in its advertising, marketing, packaging, labeling and sales of its Ghirardelli branded White and Intense Dark Chocolate flavored products  as unique and superior products justifying substantially higher prices over alternative sources of chocolate, is an unconscionable, unfair, and deceptive act or practice, in violation of the applicable Consumer Protection Acts, in that it (1) offends established public policy, (2) is immoral, unethical, oppressive, or unscrupulous, and/or (3) is substantially injurious and caused actual damages to consumers, including Plaintiff and Class Members who purchased Ghirardelli branded White Chocolate flavored products because of Defendants' representations and conduct.

66.     Plaintiff and Class Members have suffered actual damages as a result of Defendants' violation of in violation of the provisions of Section 5 of the Trade Commission Act and Rules 5 and 7 of the Regulations against Deceitful and Misleading Advertising of the

Puerto Rico Department of Consumer affairs and are entitled to relief.

67.    As a direct and proximate cause of Defendants' violations of various applicable Consumer Protection Acts, Plaintiff and Class Members have incurred harm and damages as described herein, and are entitled to recover for those damages, including but not limited to, actual damages, costs, attorneys' fees, and injunctive relief, pursuant to the Class Action Fairness Act and the various other Consumer Protection Acts.

## PRAYER FOR RELIEF

68.    **WHEREFORE,** Plaintiff, on behalf of Himself and all members of the Classes defined herein, prays for judgment as follows:

- Certification of the Class under Federal Rule of Civil Procedure 23 and appointment of Plaintiff as representative of the Classes and his counsel as Class counsel;

- A temporary, preliminary and/or permanent order for injunctive relief requiring Defendants to: (i) discontinue advertising, marketing, packaging and otherwise representing Ghirardelli Fake Chocolates as having benefits and characteristics that they do not have; (ii) undertake an immediate public information campaign to inform members of the proposed Classes as to the prior practices; and (iii) to correct any erroneous impression consumers may have derived concerning the nature, characteristics, or qualities of Ghirardelli branded fake chocolate products, including without limitation, the placement of corrective advertising and providing written notice to the public;

- An order requiring imposition of a constructive trust and/or disgorgement of Defendant's ill-gotten gains and to pay restitution to Plaintiff and all members of

the Classes and to restore to the Plaintiff and members of the Classes all funds acquired by means of any act or practice declared by this Court to be an unlawful, fraudulent or unfair business act or practice, a violation of laws, statutes or regulations, or constituting unfair competition or false advertising;

- Distribution of any moneys recovered on behalf of members of the Classes via fluid recovery or cy pres recovery where necessary and as applicable, to prevent Defendant from retaining the benefits of their wrongful conduct;

- Compensatory and other damages for economic and non-economic damages identified herein, including all damages allowed by governing statutes;

- Statutory pre-judgment and post-judgement interest

- Reasonable attorneys fees.


**RESPECTFULLY SUBMITTED,** in San Juan, Puerto Rico, on this the 16th day of June 2015.

S/*Manuel L. Morales Schmidt*
**Manuel L. Morales-Schmidt**
USDC-PR#301608
Urb. Sta. Cruz
Esteban Padilla #47 Ste. 1-A
Bayamón, P.R. 00961
Tel.: (787) 993-2109
Fax: (787) 946-1767
lcdo.manuelmorales@delgado-morales.com